Paul R. Kiesel, State Bar No. 119854
 *kiesel.law*
Melanie Meneses Palmer, State Bar No. 286752
 *palmer@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   (310) 854-4444
Fax:   (310) 854-0812

Attorneys for Plaintiff
Corey Westgate

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY WESTGATE,<br><br>          Plaintiff,<br><br>     v.<br><br>COLOPLAST CORP., a Delaware corporation; COLOPLAST A/S; COLOPLAST MANUFACTURING US, LLC, a Minnesota corporation; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.  2:18-cv-03431-DSF-RAO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS COLOPLAST CORP.'S AND COLOPLAST MANUFACTURING US, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12 (b)(6)**<br><br>Date:   September 10, 2018<br>Time:  1:30 p.m.<br>Judge: Hon. Dale S. Fischer<br>Courtroom: 7D |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     SUMMARY OF ALLEGED FACTS ....................................................... 2

III.    STANDARD OF REVIEW ....................................................................... 3

IV.     PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CAUSES OF
        ACTION ARE PLED WITH THE REQUISITE PARTICULARITY
        FOR FRAUD CLAIMS ............................................................................. 4

V.      PLAINTIFF HAS STANDING TO BRING A STATE FRAUD
        CLAIM UNDER THE CALIFORNIA CONSUMER PROTECTION
        ACT. ...................................................................................................... 10

VI.     ALTERNATIVELY, PLAINTIFF REQUESTS LEAVE TO AMEND. ....... 11

VII.    CONCLUSION ....................................................................................... 12

i

**PLAINTIFF'S OPPOSITION TO DEFENDANTS COLOPLAST CORP.'S AND COLOPLAST
MANUFACTURING US, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12 (b)(6)**

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Barson v. E.R. Squibb & Sons*,
    682 P.2d 832, 835 (Utah 1984) ............................................................... 9

*Californians for Disability Rights v. Mervyn's, LLC*
    (2006) 39 Cal.4th 223, 227 ..................................................................... 4

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732, 737 (7th Cir. 2014) .......................................................... 8

*Carideo v. Dell, Inc.*,
    706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) ................................... 10

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
    673 P.2d 660, 672 (1983) ........................................................................ 4

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136, 1140 (9th Cir. 1996) ........................................................ 3

*Germain v. J.C. Penney Co.*,
    No. CV 09-2847CAS(FMOX), 2009 WL 1971336, at *5 (C.D. Cal. July 6, 2009 ............. 8

*Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*,
    399 F. Supp. 2d 1185, 1195 (D. Kan. 2005) ......................................... 10

*Hornbeck v. Medtronic, Inc.*,
    No. 13 C 7816, 2014 U.S. Dist. LEXIS 75015, 2014 WL 2510817, at *5 (N.D. Ill.
    June 2, 2014) ............................................................................................ 8

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) ............................................ 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab.
    Litig.*,
    754 F. Supp. 2d 1145, 1174 (C.D. Cal. 2010) ...................................... 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................ 7

*Lazy Y. Ranch LTD v. Behrens*,
    546 F.3d 580, 588 (9th Cir. 2008) ........................................................ 11

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) ...................................... 10

*Siaperas v. Mont. State Comp. Ins. Fund*,
    480 F.3d 1001, 1003 (9th Cir. 2007) ...................................................... 3

*Smith v. Boehringer Ingelheim Pharm., Inc.*,
    886 F. Supp. 2d 911, 924 (S.D. Ill. 2012) ........................................... 11

*Smith v. Boehringer Ingelheim Pharm., Inc.,*
  886 F. Supp. 2d 911, 927 (S.D. Ill. 2012)....................................................... 8

*Swartz v. KPMG LLP,*
  476 F.3d 756, 765 (9th Cir. 2007)............................................................ 11

*Tyler v. Cisneros,*
  136 F.3d 603, 607 (9th Cir. 1998)............................................................ 3

*United States v. City of Redwood City,*
  640 F.2d 963, 966 (9th Cir. 1981)............................................................ 3

*Valentine v. Baxter Healthcare Corp.,*
  68 Cal. App. 4th 1467, 1483 (1999)........................................................ 9

*Vess v. Ciba- Geigy Corp. USA,*
  317 F.3d 1097, 1107 (9th Cir. 2003)....................................................... 11

*Walling v. Beverly Enters.,*
  476 F.2d 393, 397 (9th Cir. 1973)............................................................ 4

*Walton v. Bayer Corp.,*
  643 F.3d 994, 1001 (7th Cir.2011)......................................................... 11

## **STATUTES**

CACI 1205 ........................................................................................................ 9

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 3

Federal Rule of Civil Procedure 9(b) .............................................................. 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS COLOPLAST CORP.'S AND COLOPLAST**
**MANUFACTURING US, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12 (b)(6)**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

This lawsuit stems from the implantation of an Altis Single Incision Sling, a surgical transvaginal mesh device, to treat Plaintiff Corey Westgate's stress urinary incontinence. While the sling was marketed and sold as a safe, effective treatment for stress urinary incontinence, Defendants overstated the benefits of the device and failed to adequately warn Ms. Westgate and her surgeon of the serious risks posed by the subject device, resulting in Ms. Westgate's injury.

Defendants argue that the First Amended Complaint is insufficiently pled and is defective as a matter of law. In so arguing, Defendants seek to impose an impermissibly high burden on Plaintiff to prove her case before she has even conducted discovery. Specifically, Defendants argue that Plaintiff has failed to provide the 'who, what, when, where, and how' required to plead fraud. However, they ignore the substantial facts pled in the Complaint, which describe with particularity how and when Defendants used identified marketing pieces to deceive doctors, patients, and the public both on the internet and in print (Compl. ¶ 39). These marketing pieces contained known falsities with regard to the safety and efficacy of Defendants' transvaginal mesh products.

Finally, Defendants' attempt to use the learned intermediary doctrine as a sword to gut Plaintiff's fraud-based and unfair competition causes of action is unavailing where, as here, it is alleged that Defendants failed to provide adequate warnings to Plaintiff and her surgeon regarding the safety risks posed by the subject medical device. In fact, Plaintiff specifically alleges that she and her physician would not have selected the Altis Single Incision Sling had Defendants disclosed all the known risks posed by the subject device.

In short, Plaintiff's fraud-based causes of action are sufficient, particularity at this initial stage, and she has standing to bring a claim under the California Consumer Protection Act. Accordingly, Defendants' motion should be overruled in its entirety.

1

## II.      SUMMARY OF ALLEGED FACTS

Defendants manufacture, market, and sell transvaginal mesh products, including the Atlis Single Incision Sling, comprised (in whole or in part) of a synthetic, petroleum-based polypropylene mesh material. Compl. ¶¶ 14, 20.  Using the 510(k) process, Defendants obtained FDA approval for a number of transvaginal mesh products, including the subject device, which was approved on November 5, 2012. Compl. ¶¶ 23, 34. While the Atlis Single Incision Sling was intended to correct conditions like stress urinary incontinence, Defendants knew that the material used to make the sling is biologically incompatible with human tissue. Compl. ¶ 21. Defendants further understood that when implanted in the human body polypropylene mesh promotes a severe, chronic inflammatory response in a large subset of patients. *Id.* This so called "host defense response" by a patient's pelvic tissues promotes degradation of the polypropylene mesh and the pelvic tissue, and causes chronic inflammation of the pelvic tissue, shrinkage or contraction of the mesh leading to nerve entrapment, further inflammation, chronic infectious response and chronic pain. *Id.* It also can cause new-onset painful sexual relations, significant urinary dysfunction, vaginal shortening and anatomic deformation, and can contribute to the formation of severe adverse reactions to the mesh. *Id.* Indeed, on July 13, 2011, the FDA issued a warning regarding serious complications associated with transvaginal mesh, like the mesh manufactured, marketed, and distributed by Defendants, indicating that the serious complications associated with transvaginal mesh were not only rare, but prevalent. Compl. ¶ 36.

Despite mountains of scientific evidence confirming the unsuitability of polypropylene mesh for pelvic tissue repairs, Defendants marketed and sold their vaginal mesh products to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies, including aggressive marketing to health care professionals and providing cash and valuable non-cash benefits to health care providers. Compl. ¶ 39. Defendants also created and

**PLAINTIFF'S OPPOSITION TO DEFENDANTS COLOPLAST CORP.'S AND COLOPLAST
MANUFACTURING US, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12 (b)(6)**

disseminated documents, patient brochures, and information on the internet, including their websites, offering exaggerated and misleading expectations as to the safety and utility of the vaginal mesh products, while downplaying the risks of the devices. Compl. ¶ 39. In addition to the problems with the composition of the slings themselves, the First Amended Complaint details a number of other problems with the safety and efficacy of the material and the manner in which physicians are instructed on how to perform the procedure. Compl. ¶ 41.

Based on these facts and additional facts set forth in more detail in Plaintiff's First Amended Complaint, Plaintiff alleges, inter alia, that Defendants' transvaginal mesh products are defective and that they concealed material information regarding the dangers of these devices under various theories of liability, including failure to warn, strict liability, negligence, fraud, violations of the California consumer protection statutes.

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a trial court may dismiss a complaint that fails to state a claim upon which relief can be granted. Such dismissal is proper "only when there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Siaperas v. Mont. State Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007). For the purposes of a 12(b)(6) motion, all factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). The Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998). Moreover, the accepted rule is that only under extraordinary circumstances is dismissal proper under Rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

## IV.   PLAINTIFF'S FIFTH, SIXTH, AND SEVENTH CAUSES OF ACTION ARE PLED WITH THE REQUISITE PARTICULARITY FOR FRAUD CLAIMS

### A. Federal Rule of Civil Procedure 9(b) requirements have been met.

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a fraud claim be pled with particularity. A pleading is sufficient under Rule 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). The objective is to provide a defendant with "notice of 'definite charges which can be intelligently met,' and to permit the court to determine whether, 'on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.'" *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 672 (1983), superseded by statute on other grounds as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227. An exception to this strict pleading standard applies, however, where it appears that the relevant facts lie more within defendant's knowledge. *Id.* Moreover, Plaintiffs are not required to set out each and every misrepresentation in the complaint. *Id.*

Plaintiff's Complaint contains allegations regarding untrue and misleading representations made by Defendants which constitute fraud. Specifically, the Complaint details that Defendants marketed and sold the vaginal mesh products to the medical community at large and patients as safe, effective treatment for, among other things, stress urinary incontinence, using documents, patient brochures, and internet websites, which exaggerated the benefits of the device and gave misleading expectations as to the performance, utility, and safety of the vaginal mesh products. The Complaint further alleges that contrary to these demonstrably false and misleading statements to the medical community and to the patients themselves, the Defendants' vaginal mesh products had high failure, injury, and complication rates, failed to perform as intended, required frequent and often debilitating additional

operations, and caused severe and irreversible injuries, conditions, and damage to a significant number of patients. Plaintiff's complaint also specifically states that:

- Defendants knew or should have known that the Products unreasonably exposed patients to the risk of serious harm while conferring no benefit over available feasible alternatives that do not involve the same risks. Compl. ¶ 38.

- Defendants were aware that its Pelvic Mesh Products were associated with each and every one of the adverse events communicated by the FDA in its July 13, 2011, safety communication. *Id.*

- Defendants knew that scientific evidence demonstrated that polypropylene mesh as implanted was biologically incompatible with human tissue and when used as a woven or knitted alloplastic textile prosthetic mesh for pelvic floor repair, polypropylene and other surgical polymers promote a severe foreign body reaction and chronic inflammatory response in a large subset of the population implanted with Defendants' Pelvic Mesh Products. Compl. ¶ 21.

- Defendants further understood that the "host defense response" by a woman's pelvic tissues promoted degradation of the polypropylene mesh and the pelvic tissue, caused chronic inflammation of the pelvic tissue, caused shrinkage or contraction of the mesh leading to nerve entrapment, further inflammation, chronic infectious response and chronic pain, caused new-onset painful sexual relations, significant urinary dysfunction, vaginal shortening and anatomic deformation, and could contribute to the formation of severe adverse reactions to the polypropylene mesh. *Id.*

Additionally, the Complaint also details with specificity the various ways in which use of transvaginal mesh is unreasonably dangerous:

- the design of the vaginal mesh devices to be inserted transvaginally into an area of the body with high levels of bacteria, yeast, and fungus that adhere to

the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries (Compl. ¶ 41);

- biomechanical issues with the design of the mesh that create strong amounts of friction between the mesh and the underlying tissue that subsequently cause that tissue to degrade resulting in injury (*id.*);

- the use and design of anchors in the vaginal mesh products which when placed correctly are likely to pass through and injure major nerve routes in the pelvic region (*id.*);

- degradation of the mesh itself over time which causes the internal tissue to degrade resulting in injury (*id.*);

- the welding of the mesh itself during production which creates a toxic substance that contributes to the degradation of the mesh and host tissue alike (*id.*); and

- the design of trocars, as devices to insert the vaginal mesh products into the vagina, are defective because the device requires tissue penetration in nerve rich environments which results frequently in the destruction of nerve endings causing pain and other injuries (*id.*).

The Complaint also details omissions of material fact, but for which Plaintiff and her surgeon would not have selected the transvaginal mesh product to correct her stress urinary incontinence:

- Defendants knew transvaginal mesh was not as safe as other forms of treatment for pelvic organ prolapse and stress urinary incontinence (Compl. ¶ 117);

- Defendants knew the risk of adverse events with transvaginal mesh was not adequately tested and was not fully known by Defendants (*id.*);

- Defendants deliberately failed to investigate follow up on the adverse results from clinical studies and buried and misrepresented those results (*id.*);

**PLAINTIFF'S OPPOSITION TO DEFENDANTS COLOPLAST CORP.'S AND COLOPLAST MANUFACTURING US, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12 (b)(6)**

- Defendants were aware at all times of the dangers in transvaginal mesh, in addition to, and above and beyond the risks normally associated with treating pelvic organ prolapse and stress urinary incontinence (*id.*);

- Defendants knew transvaginal mesh was defective, and caused dangerous and adverse side effects, including, but not limited to, erosion of the vaginal wall and other tissues, infection, permanent and substantial physical deformity, and loss of the ability to perform sexually, at a much more significant rate than other treatments for pelvic organ prolapse and stress urinary incontinence (*id.*);

- Defendants knew patients with transvaginal mesh implanted need to be monitored more regularly than patients treated with other treatments for pelvic organ prolapse and stress urinary incontinence (*id.*).

Finally, the Complaint also alleges that Defendants, despite having a duty to adequately disclose the risks associated with transvaginal mesh, instead made these knowingly false statements to induce patients and healthcare providers, like Ms. Westgate and her doctor, to select their product over other available treatments for stress urinary incontinence. Compl. ¶¶ 118-136.

By pleading the above facts in her Complaint, Plaintiff satisfies the elements of a fraudulent concealment claim: (1) a misrepresentation which includes concealment or nondisclosure; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). As alleged in the Complaint, Defendants knew of the problems with the mesh and yet never informed patients or healthcare providers of those risks. Compl. ¶ 42. Plaintiff and her surgeon relied on Defendants' incomplete and inaccurate misrepresentations when selecting and implanting the Altis Single Incision Sling. Compl. ¶¶ 120-24.

Plaintiff has stated the *who*: Plaintiff contends Defendants, through their agents, servants, employees, and / or owners (Compl. ¶ 5), misrepresented the safety,

and efficacy of transvaginal mesh products, including the Altis Single Incision Sling, in communications directed at Plaintiff and her physicians. Compl. ¶¶ 39, 44, 49.  As to *how*: Plaintiff alleges that these misrepresentations were disseminated through documents, patient brochures, and internet websites as well as in-person at medical conferences, hospitals, and private offices. Compl. ¶ 39. And *where* was this fraudulent misrepresentation made? Throughout the United States, including specifically at medical conferences, hospitals, and private offices. Compl. ¶ 39.

Additionally, contrary to Defendants' assertion, Plaintiff does not need to list specific individuals who made false and misleading representations. *Germain v. J.C. Penney Co.*, No. CV 09-2847CAS(FMOX), 2009 WL 1971336, at *5 (C.D. Cal. July 6, 2009 (fraud sufficiently pled); *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973) (same); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (noting that specificity pleading requirements do not "require that [the plaintiff] provide the precise date, time, and location that he saw the advertisement or every word that was included on it"); *Hornbeck v. Medtronic, Inc.*, No. 13 C 7816, 2014 U.S. Dist. LEXIS 75015, 2014 WL 2510817, at *5 (N.D. Ill. June 2, 2014) (denying motion to dismiss fraud claims where "[t]he Complaint details an elaborate campaign to manipulate the medical community as to the safety and efficacy of a use of the InFUSE(R) Bone Graft component that the FDA did not approve"); *Smith v. Boehringer Ingelheim Pharm., Inc.*, 886 F. Supp. 2d 911, 927 (S.D. Ill. 2012). This Court should reject Defendants' insistence to require more.

These elements were pled with the requisite specificity, as noted above, which satisfies the requirements for fraudulent concealment and fraudulent misrepresentation claims. Therefore, Defendants' motion with respect to Rule 9(b) should be denied.

**B.     Defendants had a duty to disclose.**

Next, Defendants argue that they owed no duty of disclosure to Plaintiff. Def. Mot. 2:22-24. Defendants forget, however, that "in the case of . . . implants, a

8

physician stands in the shoes" of the plaintiff. *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1483 (1999). Seeking to hide behind the learned intermediary defense, Defendants contend that because they had no duty to disclose information directly to Plaintiff, they cannot be liable for its suppression of material information. However, under the learned intermediary doctrine, "[t]he warning must be given to the prescribing physician and must include the potential risks, side effects, or allergic reactions that may follow the foreseeable use of the product." 1-1200 CACI 1205. A manufacturer's duty to warn is a continuous duty which lasts as long as the product is in use (*id.*), and "the manufacturer must continue to provide physicians with warnings, at least so long as it is manufacturing and distributing the product." *Valentine*, 68 Cal. App. 4th at 1482. Accordingly, because the learned intermediary defense bars a manufacturer's liability *only if* the manufacturer provided adequate warnings to the intermediary, a manufacturer cannot rely on the learned intermediary defense if the warning to the doctor was inadequate. *See, e.g., id.* at 1483*; Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 463 (Kan. 1987) (holding a manufacturer's duty to warn is owed to medical professionals, and the "breach of that duty by the manufacturer will result in the manufacturer being directly liable to the patient."); *see also*, *Barson v. E.R. Squibb & Sons*, 682 P.2d 832, 835 (Utah 1984) ("The manufacturer of ethical drugs has the duty of making timely and adequate warnings to the medical profession of any dangerous side effects produced by its drugs of which it knows or has reason to know. The manufacturer is directly liable to the patient for the breach of such duty.").

Here, Plaintiff's allegations demonstrate that Defendants had material, known information regarding the risks posed by the Altis Single Incision Sling, but failed to fully inform Ms. Westgate and her surgeon of those risks, resulting in her injury. Compl. ¶¶ 120-24; 134. Importantly, had Ms. Westgate's surgeon known of these risks at the time, she would never have implanted the Altis Single Incision Sling into Ms. Westgate. Compl. ¶¶ 128-29; 132-35.

9

Moreover, Defendants owed a duty of disclosure to Plaintiff because they had exclusive and superior knowledge of the defect, but made only partial disclosures and concealed the safety risks. There is a duty to disclose where a defendant is in possession of exclusive knowledge of a defect. "[E]xclusivity is analyzed in part by determining whether the defendant has superior knowledge." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (finding manufacturer had duty to disclose based on exclusive knowledge of a defect under, inter alia, California, Massachusetts, New York, and Pennsylvania common law and consumer protection statutes); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1174 (C.D. Cal. 2010) (duty to disclose under California statutory and common law where defendant has superior knowledge); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) (sustaining fraudulent concealment claim under Washington law where plaintiffs pled that "[defendant] was in a superior position to know the facts about the hidden defects in the computers [] and common sense dictates that the defects alleged by Plaintiffs are not of the sort readily ascertainable to the average customer"); *Great Plains Christian Radio, Inc. v. Cent. Tower, Inc.*, 399 F. Supp. 2d 1185, 1195 (D. Kan. 2005) (a duty to disclose under Kansas law may be imposed where defendant had "superior knowledge combined with a relationship between the parties in the sense that there is, for example, a disparity of bargaining power or expertise"); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) (sustaining fraudulent concealment claim under Virginia law in auto defect case).

## V.     PLAINTIFF HAS STANDING TO BRING A STATE FRAUD CLAIM UNDER THE CALIFORNIA CONSUMER PROTECTION ACT.

Defendant claims Plaintiff cannot have standing to bring a claim under the California Consumer Protection Act because "it is the learned intermediary (i.e., the physician) — not the patient — who makes the decision regarding which medical device to use." But this argument completely leap-frogs the concept of informed

10

consent (without which the procedure cannot be completed in the first place) and unilaterally resolves a factual dispute between the parties in Defendants' favor, *i.e.* whether Mrs. Westgate would have accepted the risks of the Altis Single Incision Sling if those risks had been completely disclosed to her and her physician. Plaintiff explicitly alleges that she and her physician would not have selected the Altis Single Incision Sling if Defendants had provided a complete disclosure of the risks posed by the device (Compl. ¶¶ 132-135). Defendants' contention to the contrary does not resolve that factual dispute. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (for purposes of a motion to dismiss, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor.); *see also*, *Smith v. Boehringer Ingelheim Pharm., Inc.*, 886 F. Supp. 2d 911, 924 (S.D. Ill. 2012) (plaintiff's allegations that drug manufacturer misled physicians must be taken as true for a motion to dismiss and therefore the learned intermediary doctrine does not shield drug manufacturer from liability); *Walton v. Bayer Corp.,* 643 F.3d 994, 1001 (7th Cir.2011) (a manufacturer that conceals a drug's adverse side effects from physicians is not protected under the learned intermediary doctrine).

Such an analysis is wholly inappropriate for purposes of a motion to dismiss and Defendants' motion should be denied.

## VI.   ALTERNATIVELY, PLAINTIFF REQUESTS LEAVE TO AMEND.

If the Court finds Plaintiff's allegations insufficient, Plaintiff requests that the Court grant her the opportunity to amend the complaint. *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (granting leave to amend where it could not be said that the pleadings could not possibly be cured by the allegations of other facts)*; Vess v. Ciba- Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). To the extent that the Court determines there are defects in the Complaint, Plaintiff should be given the opportunity to cure them.

# VII.   CONCLUSION

For all the reasons above, Defendants' motion should be denied. Should this Court find that any of Plaintiff's claims are not adequately plead, Plaintiff respectfully requests leave to amend her Complaint, as these claims are clearly cognizable and there has been no undue delay in these proceedings.


DATED: August 20, 2018          Respectfully submitted,

**KIESEL LAW LLP**


By:      /s/ Melanie Meneses Palmer
        Paul R. Kiesel
        Melanie Meneses Palmer

        Attorneys for Plaintiff
        Corey Westgate

**PLAINTIFF'S OPPOSITION TO DEFENDANTS COLOPLAST CORP.'S AND COLOPLAST MANUFACTURING US, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12 (b)(6)**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 20, 2018, at Beverly Hills, California.

Respectfully submitted,

**KIESEL LAW LLP**

By:      /s/ Melanie Meneses Palmer
    Melanie Meneses Palmer
    *palmer@kiesel.law*
    8648 Wilshire Boulevard
    Beverly Hills, CA 90211
    Tel:   310-854-4444
    Fax:   310-854-0812

**PLAINTIFF'S OPPOSITION TO DEFENDANTS COLOPLAST CORP.'S AND COLOPLAST MANUFACTURING US, LLC'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12 (b)(6)**