UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY WESTGATE,<br>Plaintiff,<br><br>v.<br><br>COLOPLAST CORP., et al.<br>Defendants. | CV 18-3431 DSF (RAOx)<br><br>Order GRANTING in PART and DENYING in PART Defendants' Motion to Dismiss (Dkt. 20) |

Defendants Coloplast Corp. and Coloplast Manufacturing US, LLC move to dismiss the Fifth, Sixth, and Seventh Counts of Plaintiff Corey Westgate's First Amended Complaint. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The hearing set for September 10, 2018 is removed from the Court's calendar. The motion is granted in part and denied in part.

## I.  FACTS

Defendants manufacture, market, and sell transvaginal mesh products, including the Altis Single Incision Sling, comprised of a synthetic, petroleum-based polypropylene mesh material. Dkt. 18, First Am. Compl. (FAC) ¶¶ 14, 20. Using the abbreviated 510(k) process, Defendants obtained FDA approval for the Altis device on November 5, 2012. Id. ¶¶ 23, 34. The device is intended to treat pelvic organ prolapse and stress urinary incontinence. Id. ¶ 53.

On July 13, 2011, the FDA issued a warning regarding serious complications associated with Defendants' transvaginal mesh. Id. ¶ 36. Nevertheless, Defendants continued to market and sell their products to the medical community, offering exaggerated and misleading expectations as to their safety and utility. Id. ¶¶ 39, 42, 44.

In November 2013, Plaintiff underwent a medical procedure during which Defendants' Altis Single Incision Sling was implanted. Id. ¶ 52. As a result of her implant, Plaintiff has suffered severe and permanent injuries. Id. ¶ 56.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." St. Clare v. Gilead Scis., Inc., 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

## III. DISCUSSION

### A. Fraud Allegations (Fifth, Sixth[1], and Seventh Counts)

Defendants move to dismiss Plaintiff's fraud-based claims because they lack the specificity required by Federal Rule of Civil Procedure 9(b). An allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The allegation must set forth "what is false or misleading about a statement, and why it is false." Id. (citation omitted).

Plaintiffs' complaint fails to meet this standard. First, although Plaintiff describes a number of specific statements made by Mentor or others, none of these appears to be the type of statement that would subject Defendants to liability. See FAC ¶¶ 25, 29, 30, 33, 35. What appear to be allegations of false statements fail to meet the Rule 9(b) requirements. See id. ¶¶ 38 ("Despite claims that polypropylene mesh is inert . . ."), 39 ("Also utilized are documents, patient brochures and websites offering exaggerated and misleading expectations as to the safety and

---

[1] The Ninth Circuit has not yet decided whether Rule 9(b)'s heightened pleading standard applies to a claim for negligent misrepresentation. The issue has divided district courts in California, with no clear consensus. Compare Patriot Sci. Corp. v. Korodi, 504 F. Supp. 2d 952, 965 (S.D. Cal. 2007) (holding that Rule 9(b) applies), with Petersen v. Allstate Indem. Co., 281 F.R.D. 413, 418 (C.D. Cal. 2012) (holding that Rule 9(b) does not apply, and criticizing and rejecting line of authority reaching the opposite conclusion). Because Plaintiff argues her negligent misrepresentation claim is pleaded with the requisite particularity, the Court assumes for purposes of this order that Rule 9(b) applies.

utility of the vaginal mesh products."), 48 ("Defendants misrepresented to the medical and healthcare community, to Plaintiff, the FDA, and the public that the vaginal mesh products had been tested and were found to be safe and effective for the purposes of treating incontinence and/or prolapse."). Plaintiff fails to identify the particular circumstances surrounding Defendants' allegedly fraudulent representations. The FAC alleges Defendants manufactured, marketed, and distributed transvaginal mesh devices that they knew to be defective in the United States, including California, via documents, patient brochures and internet websites, as well as in person at medical conferences, hospitals, and private offices. But it is not clear what specific statements were made or to whom, when, where, or by whom, and what was false about them. The FAC also alleges Plaintiff and her physician relied on Defendants' "statements and representations." FAC ¶ 124. Missing, however, are specific allegation as to *when* and *where* Plaintiff and her physician saw these misrepresentations, and what precise representations they saw or read.[2] See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-26 (9th Cir. 2009) (a plaintiff must specify what the misrepresentations stated, when he or she was exposed to the misrepresentation, and which ones he or she found material). Plaintiff and her doctor may not know or recall which specific person made the alleged misrepresentations, but without any more specific information, the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. From these allegations, the Court cannot

---

[2] Plaintiff also fails to connect any particular misrepresentation to her own case. It is unclear how a statement made in a private office in Florida, for example, at a conference neither she nor her doctor attended, or in a brochure neither of them read is relevant.

even tell if the alleged misrepresentations were made before Plaintiff's procedure was performed.

In addition, the FAC fails to allege with particularity the role(s) of each Defendant in the alleged fraudulent conduct. Although there is "no absolute requirement" that the FAC "must identify *false statements* made by each and every defendant," "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007). In fraud suits involving multiple defendants, "a plaintiff must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." Id. at 765 (citation and alterations omitted). Here, the FAC is replete with general allegations that "Defendants" engaged in fraudulent conduct but does not attribute specific misconduct to any *particular* Defendant.

In applying Swartz, some district courts have found allegations regarding the role of multiple defendants to be sufficient where the plaintiff alleged the defendants "worked in concert as parent and subsidiary entities in the marketing and selling" of the injury-causing goods, Brown v. Dynamic Pet Prods., No. CV-17-659-WQH, 2017 WL 4680125, at *3 (S.D. Cal. Oct. 18, 2017) or acted "jointly in the design, manufacture, marketing, sale, and distribution of" goods, Collazo v. Wen by Chaz Dean, Inc., No. CV-15-1974-ODW, 2015 WL 4398559, at *6 (C.D. Cal. July 17, 2015). Collective allegations of fraud have also been found permissible where defendants are alleged to have "engaged in precisely the same conduct." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1184 (9th Cir. 2016). The FAC, however, does not allege any sort of joint action. Although

the FAC sets out Defendants' corporate relationship, there are no allegations that the individual entities worked together or somehow acted in concert to commit fraud.

The district court's decision in Sussex Fin. Enters. v. Bayerische Hypo-Und Vereinsbank AG, No. CV-08-4791-SC, 2010 WL 94272 (N.D. Cal. Jan. 6, 2010) is helpful in illustrating the FAC's shortcomings. There the district court allowed the "lumping" of a parent corporation and two of its subsidiaries because the complaint "specifically identifie[d] the [defendants'] employees who were alleged to have participated in the wrongdoing, as well as the [defendant] division and subsidiary for which they worked." Id. at *3. Here, the FAC does not contain that level of specificity, instead simply repeating that "Defendants" were responsible for various failures and fraudulent conduct. Cf. United States v. Scan Health Plan, No. CV-09-5013-JFW, 2017 WL 4564722, at *7 (C.D. Cal. Oct. 5, 2017) (dismissing complaint for failure to satisfy Rule 9(b) because the allegations "simply refer to the [defendants] as if they were a single collective entity").

Plaintiff has failed to plead her fraud-based claims with particularity. Defendants' motion to dismiss Plaintiff's Fifth, Sixth, and Seventh Counts is granted with leave to amend.

## B. Concealment Theories of Liability (Fifth, Sixth, and Seventh Counts)

A theory of fraud by concealment under California law requires a plaintiff to "establish that [defendant] was under a legal duty to disclose" the allegedly concealed information. Lingsch v. Savage, 213 Cal. App. 2d 729, 735 (1963). A duty to disclose may exist "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff;

6

(3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997) (citation omitted).

Where a fiduciary relationship does not exist, the latter three circumstances may apply. These three circumstances "presuppose[ ] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise." Id. at 336-37. "[S]uch a relationship can only come into being as a result of some sort of *transaction* between the parties," e.g., "seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." Id. at 337; see also Deteresa v. Am. Broad. Cos., 121 F.3d 460, 467 (9th Cir. 1997) (affirming district court's grant of summary judgment on fraudulent concealment claim because plaintiff "presented no evidence that she and [defendant] shared the requisite relationship").

The FAC alleges "Defendants had a duty to disclose to Plaintiff . . . the defective nature of transvaginal mesh[.]" FAC ¶ 118. Defendants argue they had no duty to disclose facts to Plaintiff because the transactional relationship was between Coloplast and Plaintiff's physician, not Plaintiff. Mot. at 6-7 (citing FAC ¶ 53). Plaintiff's opposition misses the mark, arguing only that because a physician "stands in the shoes" of the plaintiff, Defendants had a continuous duty to warn Plaintiff of their product's hazards and faults. By conflating products liability law and fraud, Plaintiff takes a position that has been squarely rejected by California courts. See Bigler-Engler v. Breg, Inc., 7 Cal. App. 5th 276, 311-13 (2017) (finding no evidence of a relationship between manufacturer and consumer and rejecting plaintiff's attempt to impose duty to warn to fraud claim);

7

Hoffman v. 162 N. Wolfe LLC, 228 Cal. App. 4th 1178, 1187-93 (2014).

As it stands, the FAC has not sufficiently pleaded a fiduciary or transactional relationship between Plaintiff and Defendants. Defendants' motion to dismiss Plaintiff's concealment allegations in the Fifth, Sixth, and Seventh Counts is granted with leave to amend.

### C. Standing to Assert UCL Claim (Seventh Cause of Action)

Defendants argue Plaintiff lacks standing to assert her UCL claim. To establish standing, a UCL plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322 (2011). Defendants focus on the second prong, and contend that the "learned intermediary doctrine precludes the actual 'but for' reliance necessary to assert a UCL claim in California." Mot. at 8-9.

The "learned intermediary" doctrine provides that the duty to warn in the case of medical devices runs to the physician, not the patient. Plenger v. Alza Corp., 11 Cal. App. 4th 349, 362 (1992) (establishing that doctrine applies in prescription implanted medical device cases as well as prescription drug cases). A manufacturer fulfills its duty to warn if it provides adequate warnings to the physician. Id. at 362 n.6 (citing cases). In order to prove causation, a plaintiff must allege that the inadequate warning or lack of warning about the medical device risk would have altered the physician's decision to use the product. Motus v. Pfizer Inc., 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001). Plaintiffs must also show that the failure to warn caused their injuries. Id.

The Court did not find, nor have the parties identified, any California state court cases addressing whether the learned intermediary doctrine applies to UCL claims.³ Even assuming it does, the Court would not dismiss Plaintiff's UCL claim on this basis. The learned intermediary doctrine is typically applied either at summary judgment or trial. The Court rejects Defendants' attempt to take the doctrine a step further and find that it precludes Plaintiff from *stating a claim* under the UCL. In any event, the FAC alleges no healthcare provider, including Plaintiff's physician, would have prescribed Defendants' transvaginal mesh products had the problems been known. FAC ¶¶ 85, 89. Plaintiff alleges she suffered economic loss as a result of Defendants' conduct. Id. ¶ 90. Taken as true, these allegations are sufficient to reject Defendants' learned intermediary defense at this stage of the proceedings.

Defendants' motion to dismiss Plaintiff's Seventh Count for violation of the UCL based on lack of standing is denied.

## IV. CONCLUSION

Defendants' motion to dismiss Plaintiff's Fifth, Sixth, and Seventh Counts for failure to allege fraud is granted with leave to amend. Defendants' motion to dismiss Plaintiff's concealment allegations in the Fifth, Sixth, and Seventh Counts is granted with leave to amend. Defendants' motion to dismiss Plaintiff's Seventh Count for violation of the UCL based on lack of standing is DENIED. An amended complaint may be filed and served no

---

³ Based on the Court's research, every California district court and out-of-state district court to consider the issue have concluded the learned intermediary doctrine applies to consumer protection claims predicated on a failure to warn. See, e.g., Saavedra v. Eli Lilly and Co., No. CV-12-9366-SVW, 2013 WL 3148923, at *2-4 (C.D. Cal. June 13, 2013) (collecting cases).

later than October 10, 2018. The Court does not grant leave to add new defendants or new claims. Leave to add defendants or claims must be sought by a separate, properly noticed motion.

IT IS SO ORDERED.

Date: September 6, 2018

_____
Dale S. Fischer
United States District Judge